# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ENRIQUE COSTAS-TORRES (1),
NATALIO SOTO-RIVERA (2),

    Defendant.

CRIMINAL NO. 15-648 (PAD)

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

    Defendants, Enrique Costas-Torres and Natalio Soto-Rivera, were charged with conspiracy to defraud the United States Army National Guard in violation of 18 U.S.C. §§ 371, 1343, 1349, 1028(A)(a)(1) and 2 (Docket No. 3). Defendants moved to dismiss (Docket Nos. 43 and 47). The government opposed the dismissal requests (Docket No. 92). For the reasons explained below, the motions to dismiss are DENIED.[1]

### I. BACKGROUND

    In essence, the Indictment alleges that defendants (1) took advantage of a National Guard bonus program intended to reward soldiers who assisted in recruiting, and (2) misused recruits' personal, sensitive information to financially benefit themselves (Docket No. 3). The program, G-RAP, was created to address shortage of new soldiers in the Army National Guard during the wars

---

[1] Costas moved to consolidate this case with two (2) other cases (Criminal No. 15-649 (ADC) and 15-660 (FAB)), claiming – without further development – that they relate to the same core facts (Docket No. 45). The government opposed (Docket No. 51 at pp. 20-21). Those three cases allege three different conspiracies involving different defendants and different discrete overt acts. Moreover, in case No. 15-649 (ADC) trial was held and in 15-660 (FAB), trial is set to begin on June 19, 2017. Joint trial of the remaining two cases is not proper. As such, Costas' request to consolidate is DENIED.

in Afghanistan and Irak.[2] It had two primary participants: recruiters and recruiter assistants. Id. at ¶ 7. Costas was a recruiter and Soto was a recruiter assistant. Id. at ¶ 10.

## II. DISCUSSION

### A. Statute of Limitations

Defendants claim the charges are time barred (Docket No. 43 at p. 7; Docket No. 47 at p. 2). Where, as here, the statutes at issue do not include a statute of limitations, the general five-year statute of limitations set in Section 3882(a) applies. See, United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014)(so holding).[3] Defendants argue that according to the Indictment, the alleged conspiracy terminated no later than sometime in 2008, and since the charges were filed more than seven (7) years later, they are untimely (Docket No. 43 at p. 7; Docket No. 47 at p. 2).

The same argument was considered and rejected by, at least, three other judges within this District who have held that the statute of limitations period is tolled – and continues to be tolled – by the Wartime Suspension of Limitations Act, 18 U.S.C. § 3287. See, United States v. Aponte-Garcia, 2016 WL 7373882 (D.P.R. December 20, 2016)(Besosa, J.); United States v. Rodriguez-Colón, 2016 WL 3080778 (D.P.R. May 25, 2016)(García-Gregory, J); United States v. Izquierdo, Criminal No. 15-659 at Docket No. 81 (Delgado-Colón, Chief J.). For the sake of brevity, the court agrees with the reasoning and conclusions in those cases. Relevant legal principles correctly lead to the disposition set forth therein, and require the same result here.

### B. Pre-indictment Delay

Defendants complain of pre-indictment delay (Docket No. 47 at pp. 4-6). Costas alleges that the 7-year delay prevent him from having access to witnesses with personal knowledge, which

---

[2] Due to widespread fraud uncovered in the program, it was discontinued in 2012.

[3] Section 3282(a) states that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found ... within five years next after such offense shall have been committed."

in his view, creates an impairment to the defense. Id. In turn, Soto makes a general allegation of prejudice and violation of due process without elaboration (Docket No. 47 at pp. 4-6). Even though excessive pre-indictment delay can sometimes, albeit rarely, violate the Fifth Amendment's Due Process Clause, the defendant must show both that the "delay caused substantial prejudice to his right to a fair trial" and that "the [g]overnment intentionally delayed indictment ... to gain a tactical advantage"). United States v. Irizarry-Colón, 848 F.3d 61, 70 (1st Cir. 2017) (internal citations omitted).

To show prejudice, a defendant must do more than allege that witnesses' memories have faded or that evidence has been lost that might have been helpful to him. Id. (quoting United States v. Muñoz-Franco, 487 F.3d 25, 58 (1st Cir. 2007)). As to intentional delay for tactical reasons, it violates the Due Process Clause when it is the product of "bad faith reasons." Id. (quoting United States v. Crooks, 766 F.2d 7, 11 (1st Cir. 1985)). Generalizations such as defendants advance are insufficient to sustain dismissal as a matter of law.

**C. Superior Orders**

Costas alleges he cannot be held liable for any recruitment-related crimes he committed while following orders of a superior officer or public official (Docket No. 43 at p. 10). He avers he was bound by National Guard Directives to enforce and promote a recruitment program without the proper training, accountability procedures, instructions, or any kind of oversight. Id. And he states he was "just being ordered to get the job done and enlist the people necessary at all costs to fight and fill their ranks." Id. But he has not cited any legal authority in support of the argument he relies on. See, United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work,

create the ossature for the argument, and put flesh on its bones"). Thus, dismissal would not be appropriate.

   **D. Contractor Status**

   Soto contends the charges against him should be dismissed because he was a recruiter assistant working for a contractor who administered the bonus program, Document Packaging Broker, Inc. ("Docupak") [4] pursuant to a contract with the National Guard Bureau (Docket No. 3) and as such, committed no crime against the United States or an agency thereof (Docket No. 47 at p. 2). As support, he relies on a Fifth Circuit case in which the definition of a "federal agency" under the Federal Tort Claims Act was discussed, for the proposition that when a private organization has a contract with the United States does not become an agency of the United States (Docket No. 47 at pp. 2-4).[5] He misses the mark.

   The scheme alleged in the Indictment is essentially a scheme to commit fraud against the United States. The offenses charged were allegedly committed in connection with a contract between the United States Army National Guard Bureau and Docupak, who administered G-RAP to carry out a nationwide civilian recruitment force in direct relation to the authorized used for Armed Forces in Afghanistan and Iraq. In simple terms, the alleged conspirators engaged in a scheme that involved conspiracy to commit bribery and theft of government funds, wire fraud and aggravated identity theft.

   With their alleged acts, defendants cheated G-RAP by having a recruiter assistant create an account and/or allow recruiter's use of recruiter assistant's accounts to enter all information necessary to claim recruiting bonuses they have not earned, using personal information given to

---

[4] Soto was in the Puerto Rico National Guard from on or about May 31, 1974 through on or about July 30, 2003. Between on or about September 18, 2006, through on or about the year 2010, he participated as a recruiter assistant in G-RAP (Docket No. 3 at ¶ 11).

[5] Dwyer v. Fidelity Nat. Property and Cas. Ins. Co., 565 F.3d 284, 289 (5th Cir. 2009).

the recruiters by enlistees who would seek orientation to enlist in the PR Army National Guard. The recruiters would obtain this information in their official capacities as recruiters and would apply (using G-RAP's accounts) for fraudulent recruiting bonuses. Based on those fraudulent representations, the recruiters assistants were paid bonuses that would later withdraw to pay the recruiters for their participation in the scam.[6]

Each month, Docupak submitted invoices to the Army National Guard Bureau assigned to the Docupak contract for review and verification of services delivered. And the Army National Guard Bureau would then pay those invoices deemed to be valid, with federal monies/funds. With these allegations, it is hard to conclude that no crime was committed against the United States. See, Rivera-Rodriguez, 2016 WL 37742000 at *1, n.1 (rejecting as meritless a similar argument made by a recruiter). For the same reason, Soto's argument fails.

### III. CONCLUSION

In view of the foregoing, the motions to dismiss at Docket Nos. 43 and 47 are DENIED. A Status Conference is hereby set for June 23, 2017 at 5:00 p.m.

**SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of June, 2017.

                                         s/Pedro A. Delgado-Hernández
                                         PEDRO A. DELGADO-HERNÁNDEZ
                                         U.S. DISTRICT JUDGE

---

[6] Under the contract, recruiter assistants were eligible for recruiting referral bonuses between $500.00 and $1,000.00 for every referred soldier that enlisted in the Army National Guard, and an additional bonus between $500.00 and $1,000.00 once the referred soldier was sent to Basic Training. Id. at ¶ 9.